**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Derek Pearson** | ) | **CASE NO. 1:12 CV 3002** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Cuyahoga County Executive** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

### Introduction

This matter is before the Court upon Plaintiff's Motion for Partial Summary Judgment (Doc. 26) and Defendant Cuyahoga County's Motion for Summary Judgment (Doc. 28-1). This is an FMLA case. For the reasons that follow, plaintiff's motion is DENIED and defendant's motion is GRANTED.

### Facts

Plaintiff, Derek Pearson, filed this lawsuit against defendant, the Cuyahoga County Executive, following plaintiff's termination from employment. Except where indicated, the facts relevant to plaintiff's claim are not in dispute.

1

**A. Defendant's Attendance Policy**

During the course of his employment, plaintiff was aware of and subject to defendant's Attendance Policy, applicable to all employees.  At the first stage of the policy, if an employee accumulated 10 or more hours of absence without leave ("AWOL") over a two-year period, he was subject to an AWOL written reprimand.  At the second stage, if the employee accumulated 10 or more hours of AWOL over the two-year period following the issuance of an AWOL written reprimand, the employee was subject to a three-day suspension.  At the third stage, if the employee accumulated 16 or more hours of AWOL in the two-year period after his three day suspension, the employee was subject to removal. (Doc. 26-9).

**B. Plaintiff's Employment**

Plaintiff was hired by defendant as a full-time custodial worker on June 26, 2006.  As a custodial worker, plaintiff was responsible for cleaning defendant's buildings and properties.

When plaintiff began his employment, he suffered from several medical conditions, including problems with his kidneys, heart, back, hip, gout, hypertension and alcoholism. (Doc. 26-4).  Plaintiff was first approved for intermittent leave under the Family and Medical Leave Act ("FMLA") on February 18, 2009 for "severe degenerative joint disease of the right hip." (Doc. 26-1 p. 5).  Plaintiff was again approved for intermittent FMLA leave from June 3, 2010 to June 3, 2011 for continued problems with plaintiff's hip. (Doc. 26-13).

Defendant's policy for using FMLA leave directs an employee to call a designated phone number and state that he is going to be absent from work and that it is due to FMLA purposes. The employee then indicates whether or not he would like to use sick pay, vacation

pay, or take the day unpaid. (Doc. 26-2).

During his employment, plaintiff had absences from work which were not covered by his FMLA leave, sick leave, or vacation time for which he was designated AWOL. In June 2010, plaintiff reached the second stage of the Attendance Policy. He was suspended June 8-10, 2010.[1] Consequently, plaintiff would be subject to disciplinary removal if he was absent without approved leave for 16 or more hours during the next two years.

### C. Plaintiff's 2011 FMLA Certification

As part of a reapplication for an FMLA intermittent leave designation, Plaintiff's physician, Dr. Tuffuor, completed a health care provider certification on September 14, 2011. In the section requesting other relevant medical facts related to the condition for which the employee seeks leave, Dr. Tuffor wrote "chronic kidney disease, hypertension, hyperlipidemia, chronic bilateral hip, & lower back pains." (Doc. 26-23 p. 3). In response to a question asking whether it was medically necessary to be absent from work during flare-ups, Dr. Tuffuor responded: "Due to severity of his illness has a severe bilateral hips and lower back pains hard to work during flare-ups." (Doc. 26-23 p. 3). Dr. Tuffuor estimated the frequency of the flare-ups to be one time per month, with a duration of three to four days per episode. (Doc. 26-23 p. 3).

On December 8, 2011, plaintiff was issued a designation notice by defendant approving him for intermittent FMLA leave. The designation stated that the estimated

---

[1] In his motion, plaintiff also challenges designation of some of his absences before 2012 as AWOL, arguing that he was covered by earlier FMLA certifications, or was at least eligible for leave. (Doc. 26-1 p. 3-7). These issues were not, however, presented in his complaint so the Court does not address them.

frequency of plaintiff's need for leave would be one time per month, with a duration of three to four days per episode.

### D. Defendant's Request for Recertification

Plaintiff called off work on January 9, 2012 under his FMLA leave. Plaintiff then called off work again on January 30 through February 9, as part of a nine consecutive working day absence. On each day, plaintiff complied with defendant's call-off policy and indicated his leave was for FMLA purposes.

On February 9, 2012, defendant sent plaintiff a letter. In part, the letter read:

> The information that was provided by your doctor stated that you may be absent from work because of flare-ups that may last 3 to 4 days. Because your absence has exceeded the designation of time noted, we ask that you recertify to substantiate the need for additional time off due to your medical condition.

(Doc. 26-25). The letter also contained an FMLA "Notice of Eligibility and Rights and Responsibilities" form. The form read in part:

> On 2/3/2012, you informed us that you need leave beginning on 2/6/2012 for:
> . . .
> Your own serious health condition;
> . . .
> As explained in Part A, you meet the eligibility requirements for taking FMLA leave and still have leave available in the applicable 12-month period. **However, in order for us to determine whether your absence qualifies as FMLA leave, you must return the following information to us by 2/24/2012.** (If a certification is requested, employers must allow at least 15 calendar days from receipt of this notice.) **If sufficient information is not provided in a timely manner, your leave may be denied.**

(Doc. 26-26 p. 2) (emphasis original). Defendant also included a health care provider certification form to be filled out by plaintiff's physician at this time.

### E. Plaintiff's Later February Absences

On February 21, 2012, plaintiff called off work again citing his FMLA leave. The

4

parties disagree about the events that follow. Defendant contends that on February 22, 2012, plaintiff spoke with Leigh Ann Harris in defendant's human resources department and told her that he was absent from work due to chest pain, and not for his hip condition. Plaintiff, in contrast, contends he was out for his hip condition and did not tell Ms. Harris he was having any problem with chest pains at this time. Defendant contends that plaintiff again spoke to Ms. Harris on February 23, 2012, and repeated that his leave was for chest pain that day. Plaintiff disputes that he told Ms. Harris he was having any chest pains at that time.

The parties agree that on February 24, 2012, plaintiff contacted Ms. Harris and requested that she send him new FMLA certification forms so he could take them to his cardiologist. Defendant contends that plaintiff again told Ms. Harris during this conversation that his absences for February 21-24 had been due to chest pain and not his hip. Plaintiff states that he began to experience problems with his heart on February 24. He argues that he wanted to get an FMLA certification for this condition so he could get FMLA leave for it in the future if needed and informed Ms. Harris of this. (Doc. 26-1 p. 9).

Plaintiff saw his cardiologist, Dr. Bhargava, on February 27, 2012. Dr. Bhargava evaluated plaintiff and released him to return to work without restrictions and he returned to work that day. (Doc. 26-27). Upon returning to work, defendant provided plaintiff with an eligibility notice under the FMLA and requested certification for plaintiff's new condition. (Doc. 26-4 p. 7, Doc. 26-1 p. 10). This FMLA eligibility notice stated:

> On 2/22/2012, you informed us that you needed leave beginning on 2/21/2012 for:
> . . .
> Your own serious health condition;
> . . .
> **However, in order for us to determine whether your absence qualifies as FMLA leave, you must return the following information to us by 3/13/2012.** (If a

> certification is requested, employers must allow at least 15 calendar days from receipt of this notice.) **If sufficient information is not provided in a timely manner, your leave may be denied.**

(Doc. 26-28 p. 7) (emphasis original). Defendant provided plaintiff with a health care provider certification form to be filled out by his physician at this time.

Defendant believed that the February 21-24 absences were not covered by FMLA leave. (Doc. 26-37). Defendant designated plaintiff as AWOL for those days. (Doc. 26-16 p. 5). Plaintiff was absent from work March 19-21, 2012. This leave was designated by defendant as FMLA leave. (Doc. 26-16 p. 5).

### F. Plaintiff's Termination

On April 23, 2012, plaintiff received notification of a pre-disciplinary conference scheduled for April 26, 2012. (Doc. 26-32). The notification informed plaintiff that the additional AWOL hours from his late February absences placed him in violation of stage three of the Attendance Control policy.

On April 24, 2012, plaintiff's physician, Dr. Tuffuor, submitted a recertification to defendant. The new certification did not include an indication of the frequency of plaintiff's flare-ups, but indicated that they could last for a duration of up to seven days. The certification indicated that plaintiff had been treated March 6 and March 21, but did not address the February 21-24 absences. (Doc. 26-31).

During plaintiff's pre-disciplinary conference on April 26, 2012, plaintiff also submitted a certification from Dr. Bhargava's office. Dated February 29, 2012, the certification completed by Dr. Bhargava's physician's assistant requested intermittent leave for plaintiff for his heart condition. The certification indicated that plaintiff would have a

period of incapacity from February 27 to March 19, 2012.  The certification indicated that the estimate of the frequency and duration of plaintiff's flare-ups were "unknown at this time." (Doc. 26-29).

Plaintiff was notified on June 8, 2012 that his employment had been terminated. Defendant's letter read in part:

> As of pay period ending February 25, 2012, you accrued an additional 32 hours of unexcused AWOL time placing you in violation of Stage 3 of Section 14.03 (Attendance Control Policy). During the time of your absence, you were provided an opportunity to produce documentation from your physician qualifying your absence as an FMLA related illness.
>
> You were provided notice of and attended a Pre-Disciplinary Conferece (PDC), on April 26, 2012, where a full opportunity was provided to respond to the above noted charge. At the PDC, you explained that you have multiple illnesses and are currently under doctor's care for each. You then submitted FMLA Certification from a medical specialist dated February 29, 2012, which outlined your health concerns and proposed course of treatment for a purportedly different FMLA qualifying event than those documented in your current FMLA Recertification. . . . Additionally, this FMLA Certification documents a period of incapacity of 2/27/12 through 3/19/12, at which time you were at work. Again, this period of incapacity does not cover the period of your alleged AWOL time.

(Doc. 26-34 p. 1, 2).

Plaintiff thereafter filed this suit.  The complaint contains two claims for relief.  The first claim alleges a violation of the FMLA.  The second claim alleges a violation of Ohio Revised Code § 4112.02 and 4112.99, which prohibit disability discrimination.  Defendant removed to this Court on the basis of federal question jurisdiction.  Plaintiff now moves for partial summary judgment on liability for his FMLA interference claim.  Defendant opposes that motion and moves for summary judgment on both plaintiff's FMLA interference claim and his disability discrimination claim.

7

**Standard of Review**

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323. A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985). However, summary judgment should be granted if the party bearing the

burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317).

**Discussion**

**1. FMLA Interference Claim**

The FMLA states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided [by this Act]." 29 U.S.C. § 2615(a)(1). More specifically, the FMLA prohibits an employer from counting FMLA leave against an employee under its "no fault" attendance policy. *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 422 (6th Cir. 2004) (citing 29 C.F.R. § 825.220(c)). An employee believing he has been denied his FMLA rights may assert a cause of action for FMLA interference. *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 555 (6th Cir. 2006).

To prevail on an FMLA interference claim, a plaintiff must establish that (1) he was an eligible employee as defined under the FMLA; (2) his employer was a covered employer as defined under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave the employer notice of his intention to take FMLA leave; and (5) his employer denied FMLA benefits to which he was entitled. *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (citing *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003)).

Plaintiff argues that he was granted intermittent FMLA leave on December 8, 2011. He followed defendant's call-off procedures and informed defendant of his need for FMLA leave for his February 21-24 absences due to his hip. Because defendant counted these days as AWOL causing plaintiff to have a stage three attendance violation which triggered his termination, plaintiff concludes that defendant denied him his rights under the FMLA.

9

Defendant argues that it asked plaintiff to recertify his medical condition on February 9, 2012 and afforded plaintiff the statutorily required 15 days to return the certification. Plaintiff failed to do so until April 24, 2012.  When plaintiff did return certifications to defendant at the time of his pre-disciplinary conference, they were insufficient because they provided incomplete time and frequency estimates of flare-ups.  Additionally, they did not support the conclusion that plaintiff had been disabled on February 21-24, the dates for which he had received AWOL.  Because defendant believed that the absences were not covered by the FMLA, defendant terminated plaintiff's employment for violating its attendance policies.

Plaintiff initially disputes the validity of defendant's request that he recertify his medical conditions on February 9, 2012.[2]  Plaintiff argues that defendant had no basis to require him to recertify his need for leave only two months after it had been approved in December 2011.  Defendant contends that it was within its rights to request recertification given that the duration and frequency of his absences were double the estimate provided by his doctor.

An employer may demand "a recertification of a medical condition every six months in connection with an absence by the employee." 29 C.F.R. § 825.308(b).  However, an employer may demand recertification after less than 30 days if "[c]ircumstances described by the previous certification have changed significantly," including an "increased duration of absence." *Id.* § 825.308(c)(2).

---

[2] Plaintiff appears to also argue that defendant should be estopped from asserting its recertification request or that it has waived the request.  However, he cites no cases in support of his position and the Court has found one. Therefore, defendant may rely on its recertification request if it was reasonable.

Defendant's recertification request came within six months of his approval for intermittant FMLA leave on December 8, 2011. However, circumstances had changed significantly to make § 825.308(c)(2) applicable. Defendant was absent from work January 9 and January 30-31. He was then absent February 1, 2, 3, 6, 7, 8, and 9. Because plaintiff had taken nine days rather than the estimated three or four, defendant asked him to recertify his medical condition to substantiate the need for the additional time off. (Doc. 26-25). "[A]n FMLA certification does not provide a no-questions-asked pass for employees to take time off whenever and for however long they wish. If an employee desires more time off than described in the prior certification, the employer may require updated information from a physician." *Smith v. City of Niles*, 505 F. App'x 482, 484-85 (6th Cir. 2012). The Court finds defendant's recertification request to be reasonable. 29 C.F.R. § 825.308(c)(2) ( "[I]f a medical certification stated that an employee would need leave for one to two days . . . and the employee's absences . . . lasted four days each, then the increased duration of absence might constitute a significant change in circumstances....").

Plaintiff next argues that defendant never alerted him that his prior leave was no longer valid and that failure to recertify would result in denial of FMLA leave. He was never informed that his April 24, 2012 certification from Dr. Tuffuor was insufficient and he claims that the certification from Dr. Bhargava's office establishes that he had a serious health condition. Finally, plaintiff argues that defendant's alleged basis for termination, i.e. plaintiff's failure to recertify, is inconsistent with the evidence presented.

A plaintiff is entitled to leave under the FMLA "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such

11

employee." 29 U.S.C. § 2612(a)(1)(D). It is a plaintiff's responsibility to furnish certification [or recertification] of the serious medical condition if the employer requests it. 29 C.F.R. § 825.305(d). "At the time the employer requests certification [or recertification], the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification." 29 C.F.R. § 825.305(d).

The employee must timely act to comply with the employer's request. "The employee must provide the requested recertification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts." 29 C.F.R. § 825.308(d). The consequences for failure to comply with the request are grave. "If an employee fails to provide a recertification within a reasonable time under the particular facts and circumstances, then the employer may deny continuation of the FMLA leave protections until the employee produces a sufficient recertification. If the employee never produces the recertification, the leave is not FMLA leave." 29 C.F.R. § 825.313(c).

The Sixth Circuit has upheld the denial of FMLA benefits when a plaintiff fails to return a certification within the 15-day deadline. *See Kinds v. Ohio Bell Telephone Co.*, 724 F.3d 648 (6th Cir. 2013) (upholding termination where employee failed to return certification within time frame given by employer); *Frazier v. Honda of Am. Mfg. Inc.*, 431 F.3d 563 (6th Cir. 2005) (upholding employee's termination for absenteeism after he turned in a medical certification form one day after the 15-day deadline).

Defendant requested plaintiff recertify his medical condition on February 9, 2012.

Plaintiff's argument to the contrary, this letter alerted plaintiff that his prior leave was no longer valid when he was directed "to recertify to substantiate the need for additional time off." (Doc. 26-25).  Defendant then gave plaintiff until February 24, 2012, the 15 calendar days statutorily required, to complete the certification.  The Notice of Eligibility and Rights and Responsibilities form defendant enclosed with its recertification request letter advised plaintiff that:"[i]f sufficient information is not provided in a timely manner, your leave may be denied." (Doc. 26-26 p. 2).  Plaintiff does not dispute that he failed to return the requested certification within the time frame requested.  Nor has plaintiff presented any argument that it was impracticable for him to complete the certification despite his diligent and good faith efforts.

Therefore, plaintiff's claim fails for not providing a timely recertification.  Plaintiff failed to submit an FMLA certification form when requested.  Defendant did not receive any medical certification from plaintiff until his pre-disciplinary conference on April 24, 2012, two months after the expiration of the time frame set in its recertification request.  As such, plaintiff cannot establish he was entitled to FMLA leave.

Plaintiff's argument that he was entitled to FMLA leave because Dr. Tuffuor's April 24, 2012 certification and the certification from Dr. Bhargava's physician's assistant demonstrate that he had a serious medical condition are unavailing.  "[T]he failure to provide a medical certification is an independent basis for denying FMLA leave notwithstanding the appropriateness of that leave." *Kinds v. Ohio Bell Telephone Co.*, 724 F.3d 648, 654 (6th Cir. 2013).  The Court therefore does not consider whether plaintiff had a serious medical condition during his February 21-24 absences. *Id*. (declining to consider whether plaintiff had

13

serious health condition where she failed to submit certification within the deadline); *Frazier v. Honda of Am. Mfg., Inc.*, 431 F.3d at 566–67 (6th Cir. 2005) (forgoing inquiry into the merits of plaintiff's medical condition where plaintiff submitted medical certification one day past the 15-day deadline).

Consequently, the Court DENIES plaintiff's motion for summary judgment on his FMLA interference claim and GRANTS defendant's motion for summary judgment on the FMLA claim.[3]

### 2. Ohio Revised Code Claim

Defendant has moved for summary judgment on plaintiff's claim for disability discrimination under Ohio law. Defendant argues that plaintiff was not a qualified individual with a disability entitled to a reasonable accommodation because he could not meet defendant's neutral attendance standards. Defendant notes in a footnote that plaintiff lacks any evidence that he requested a four-day leave of absence as a disability accommodation and that defendant's Personnel Policies and Procedures manual included an ADA accommodation request process that plaintiff did not follow. Plaintiff argues defendant should have given him a reasonable accommodation for his disability by giving him an unpaid leave of absence for February 21-24.

In order to establish a prima facie case of disability discrimination under the ADA for

---

[3]     Plaintiff's complaint appears to bring an FMLA retaliation claim as well as the interference claim on which he moved for summary judgement. Plaintiff did not address this claim in response to defendant's summary judgment motion and appears to have abandoned it. Because plaintiff did not raise or brief this issue, it is waived. *See Jones-Stott v. Kemper Lumbermans Mut. Cas. Co.,* Civil Case No. 04-40263, 2007 WL 470474 (E.D. Mich. Feb. 7, 2002). Therefore, this claim is subject to dismissal as a matter of law.

failure to accommodate, plaintiff must show that: (1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) his employer knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *Melange v. City of Center Line*, 482 Fed. Appx. 81 (6th Cir. 2012) (citing *Johnson v. Cleveland City Sch. Dist*., 443 Fed. Appx. 974 (6th Cir. 2011)).

Assuming plaintiff is disabled and qualified, plaintiff's prima facie case fails because he failed to request an accommodation from defendant. In *Melange*, *supra*, the court recognized that the prima facie case fails where the plaintiff cannot show that he requested a reasonable accommodation prior to his termination. "The employee bears the burden of requesting a reasonable accommodation." *Id.* (citing *Johnson*, 443 Fed. Appx. at 983). "Once the employee requests an accommodation, the employer has a duty to engage in an 'interactive process' to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" *Id.* (citing *Kleiber v. Honda of Am. Mfg., Inc*., 485 F.3d 862, 871 (6th Cir. 2007)). "But if the employee never requests an accommodation, the employer's duty to engage in the interactive process is never triggered." *Id.* (citing *Lockard v. Gen. Motors Corp*., 52 Fed. Appx. 782, 788 (6th Cir. 2002)).

The employee need not invoke the ADA to be requesting an accommodation under it. "What matters under the ADA are not formalisms about the manner of the request, but whether the employee . . . provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an

15

accommodation." *White v. Honda of America Mfg., Inc.*, 191 F. Supp. 2d 933, 950, (S.D. Ohio 2002) (quoting *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 313 (3rd Cir. 1999)). However, "[t]he request for accommodation must be sufficiently direct and specific, giving notice that [the employee] needs a special accommodation." *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 23 (1st Cir. 2004). "The employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046-47 (6th Cir. 1998).

Plaintiff argues that when he called in during his late February absences he "in essence, requested a short, four-day leave of absence as an accommodation." (Doc. 30 p. 13).

Upon review, the Court concludes that plaintiff did not request an accommodation. While not dispositive, defendant has alleged that it has a specific ADA accommodation request process that plaintiff failed to follow. Plaintiff has put forward no evidence that he attempted to do so. Defendant cannot be said to have fairly known that plaintiff was asking for a leave of absence as a special accommodation when he called in and took off work citing his FMLA leave, entitlement to which he lost only by virtue of his failure to return the requested certification forms. Plaintiff provides no evidence that when he became aware that defendant was contesting the validity of his FMLA leave for his late February absences that he then asked defendant to give him an accommodation. Accordingly, plaintiff cannot demonstrate that defendant failed to accommodate him. *Accord Schaefer v. Cuyahoga County Veterans Service Com'n*, No. 1:11–CV–00747, 2011 WL 6934804 (N.D. Ohio Dec. 30, 2011) (concluding plaintiff had not requested an accommodation where he was out sick in the hospital and upon returning to work had provided documentation supporting most of his

absences).

Because plaintiff fails to establish that he requested an accommodation, his prima facie case for failure to accommodate under the ADA fails. Accordingly, summary judgment for defendant on plaintiff's disability discrimination claim under Ohio law is warranted.

**Conclusion**

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment (Doc. 26) is DENIED and Defendant Cuyahoga County's Motion for Summary Judgment (Doc. 28-1) is GRANTED.  Judgment is entered in favor of defendant and the case is hereby DISMISSED.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 2/7/14